UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**ANDRE TUCKER,**

      Plaintiff,

  v.

**RON HALL'S FAMOUS FINAL CLEANING COMPANY,**

      Defendant.

Case No. 1:24-cv-215

JUDGE DOUGLAS R. COLE

# OPINION AND ORDER

Plaintiff Andre Tucker worked for Defendant Ron Hall's Famous Final Cleaning Company (Ron Hall's) for a short time. During that time, however, Ron Hall's paid Tucker less than the law requires. So Tucker sued. But Ron Hall's never appeared to defend itself. That prompted Tucker to first seek an entry of default from the Clerk's Office and then to file the instant motion for default judgment. For the reasons below, the Court **GRANTS IN PART** Tucker's Motion for Default Judgment (Doc. 7) in the amount of $2,088, plus $6,249.75 in attorney's fees and costs.

## BACKGROUND[1]

Tucker started working for Ron Hall's as a cleaner in April 2023. (Compl., Doc. 1, #2). Each morning, around 6:00 a.m., Tucker reported to Ron Hall's office to load the company trucks and receive his job assignment for the day. (*Id.*). Then, around

---

[1] When considering a motion for a default judgment, the Court accepts as true all well-pleaded allegations except those relating to the amount of damages. *See In re Cook*, 342 B.R. 384 (Table), 2006 WL 908600, at *3 (B.A.P. 6th Cir Apr. 3, 2006). Accordingly, the Court's summary of the factual background rests on the allegations in Tucker's Complaint (Doc. 1).

8:00 a.m., Tucker would head to his assigned job site. (*Id.*). Once at the relevant site, Tucker typically cleaned until 3:30 p.m. (*Id.* at #3). But one problem. Ron Hall's didn't allow its employees, including Tucker, to track the time they spent loading trucks and receiving their daily assignment as part of their compensable time. (*Id.*). Rather, they only received pay for the time they spent cleaning at their assigned site. (*Id.*). Worse than that, Ron Hall's docked Tucker's pay as discipline. For example, Tucker's supervisor once docked his whole day's pay for taking a lunch break before Tucker had finished cleaning his assigned room. (*Id.*). As a result of those practices, Ron Hall's failed to pay Tucker his regular wages for the hours he worked within forty hours per week, and further failed to pay Tucker one-and-a-half-times his regular wages for hours he worked beyond forty hours per week. (*Id.*). That lead Tucker to leave Ron Hall's employment in June 2023. (*Id.*).

But that's not all Tucker did. He also filed this lawsuit on April 19, 2024. He asserts claims for Failure to Pay Minimum Wage and Overtime under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. (Count 1); Failure to Pay Minimum Wage under Ohio Constitution art. II, § 34a (Count 2); Untimely Wages under Ohio Revised Code § 4113.15 (Count 3); and Civil Damages for Criminal Act under Ohio Revised Code § 2307.60 (Count 4). (*Id.* at #4–6). Ron Hall's, however, never answered or otherwise responded to Tucker's Complaint, despite being served. (Doc. 4).

So on January 7, 2025, Tucker applied for entry of default against Ron Hall's. (Doc. 5). The Clerk entered default against Ron Hall's just over a week later on January 16, 2025. (Doc. 6).

Then, on February 24, 2025, Tucker moved for default judgment against Ron Hall's. (Doc. 7). He asks the Court for a judgment of $2,092.02 in damages, plus interest and an equal amount of liquidated damages. (*Id.* at #29). And he also requests $6,249.75 in attorney's fees and costs. (*Id.*). With that, the matter is ripe.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 55 provides a two-step procedure for default judgments. A plaintiff seeking entry of default against a defendant must first show, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Upon such showing, the clerk must enter default. *Id.* And at that point, the complaint's factual allegations concerning liability, but not damages, are taken as true. *Beaver v. Eastland Mall Holdings, LLC*, No. 2:20-cv-485, 2021 WL 1084610, at *2 (S.D. Ohio Mar. 22, 2021) (cleaned up); *see also* Fed. R. Civ. P. 8(b)(6). Next, unless the claim "is for a sum certain or a sum that can be made certain by computation," the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b).

Before granting default judgment, a court must satisfy itself of two things. First, the court must verify that it has both subject-matter jurisdiction over the action and personal jurisdiction over any defendant against whom it grants a default judgment. *See Am. Clothing Express, Inc. v. Cloudflare, Inc.*, No. 2:20-cv-2007, 2022 WL 256337, at *1 (W.D. Tenn. Jan. 26, 2022). Second, the court must determine whether the facts in the complaint state a claim for relief against the defendant. *See Harrison v. Bailey*, 107 F.3d 870 (Table), 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997)

("Default judgments would not have been proper due to the failure to state a claim against these defendants."). Said differently, to warrant default judgment, "the complaint must be able to survive a Rule 12(b)(6) motion to dismiss." *Buxton v. Hartin Asset Mgmt., LLC*, No. 1:22-cv-600, 2023 WL 4861724, at *6 (W.D. Mich. July 31, 2023) (quotation omitted).

Assuming there is jurisdiction and a plausible claim, a court then "must conduct an inquiry" to establish the appropriate damages. *Beaver*, 2021 WL 1084610, at *2 (cleaned up). To do that, the court may either hold an evidentiary hearing, Fed. R. Civ. P. 55(b)(2), or it may determine damages without a hearing "if the damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits," *Beaver*, 2021 WL 1084610, at *2 (cleaned up).

## LAW AND ANALYSIS

To begin, the Court concludes that Tucker has satisfied Federal Rule of Civil Procedure 55(a)'s requirement for a default. Ron Hall's failed to plead or otherwise defend this action despite Tucker serving Ron Hall's on September 9, 2024. (Doc. 4).

Tucker's claim, though, is not for a sum certain, so the Court must determine whether Tucker is entitled to default judgment under Rule 55(b)(2). Ultimately, he is, but only for Ron Hall's violations of Ohio law.

**A.     The Court Has Jurisdiction Over This Matter.**

Jurisdiction poses no hurdles for Tucker. Start with subject-matter jurisdiction. Tucker asserts a claim under the FLSA—a federal law. The Court therefore has federal question jurisdiction over that claim, 28 U.S.C. § 1331, and will

4

exercise supplemental jurisdiction over Tucker's state-law claims, 28 U.S.C. § 1367(a).[2] Turn then to personal jurisdiction. Based on the allegations—which Ron Hall's is deemed to have admitted, *Harbold v. Smash Restro & Bar, LLC*, No. 5:22-cv-1583, 2023 WL 4085309, at *2 (N.D. Ohio June 20, 2023)—Ron Hall's is an Ohio limited liability company with its principal place of business in Ohio. (Doc. 1, #2); *see also* Ohio Sec'y of State, Business Search (last accessed March 3, 2025), https://perma.cc/N4Q8-4XD5. Ron Hall's is thus "essentially at home" in Ohio—the forum state—meaning the Court has personal jurisdiction over Ron Hall's. *IHF Ltd. v. Myra Bag*, 391 F. Supp. 3d 760, 768 (N.D. Ohio 2019) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

**B.    Tucker Plausibly Alleged That Ron Hall's Is Liable, But Only Under Ohio Law.**

Having established that the requisite jurisdiction exists, the Court next considers whether Tucker has stated a claim for relief against Ron Hall's. Recall that Tucker asserts a minimum wage and overtime claim under the FLSA and a minimum wage claim under the Ohio Constitution (Ohio Const. art. II § 34a). He also alleges a violation of the Ohio Prompt Pay Act (Ohio Rev. Code § 4113.15).

---

[2] Although the Court ultimately concludes that Tucker failed to plausibly allege his FLSA claims, it pauses to note that the federal claims were not so frivolous as to deprive the Court of its subject-matter jurisdiction. To the contrary, Tucker merely failed to plausibly allege one element of FLSA coverage. And because this Opinion and Order does not so much deal with the merits of Tucker's claims (Ron Hall's has essentially admitted liability by defaulting) as it does the proper amount of damages, the Court retains jurisdiction over Tucker's well-pleaded state-law claims (which are based on the same conduct as the federal claims) under 28 U.S.C. § 1367(a). *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412–13 (6th Cir. 1991) (explaining that district courts have "discretion to decide a pendent state law claim once the federal basis for jurisdiction is dismissed" if the interests of judicial economy outweigh the benefits of allowing an Ohio court to decide the state-law claim (cleaned up)).

### 1. Tucker Failed to Plausibly Allege FLSA Coverage.

The FLSA requires employers to pay non-exempt employees a set minimum wage. 29 U.S.C. § 206(a). And it requires employers to pay employees at least one-and-a-half times their regular pay for overtime hours—that is, for any hours beyond forty per week. *Id.* § 207(a)(1). But those provisions only extend to covered employees. *Dep't of Lab. v. Americare Healthcare Servs., LLC*, _ F. Supp. 3d _, No. 2:21-cv-5076, 2025 WL 71671, at *7 (S.D. Ohio 2025). Coverage can arise in two ways: enterprise coverage or individual coverage. *Id.*; *see also* 29 U.S.C. §§ 203(s)(1), 207(a)(1).

Before turning to coverage, the Court notes that Tucker alleges that Ron Hall's employed him to work as a cleaner. (Doc. 1, #2). So the Court is satisfied that Ron Hall's is an employer and that Tucker is an employee as the FLSA defines those terms. *See* 29 U.S.C. § 203(d), (e)(1). But whether Tucker has established that he's a *covered* employee requires closer attention. The Complaint doesn't explicitly allege either enterprise coverage or individual coverage. Tucker's motion, however, argues that he has established enterprise coverage, (Doc. 7, #24–25), so the Court will concentrate its efforts there.

Enterprise coverage exists when an employee works for an enterprise (1) that "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (2) "whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)–(ii). At bottom, the work must be "so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in

6

practical effect, a part of it, rather than isolated local activity." *Walsh v. Americare Healthcare Servs., Inc.*, No. 2:21-cv-5076, 2023 WL 2544509, at *4 (S.D. Ohio Mar. 16, 2023) (cleaned up). "Any regular contact with commerce, no matter how small, will result in coverage." *Id.* (cleaned up)

Ultimately, though, Tucker's allegations don't clear the threshold for plausibly alleging enterprise coverage. While he meets the first element (the interstate commerce prong), he falls short on the second (dollar volume).

As to the first, the Complaint does not allege that Tucker handled goods or materials that have moved in interstate commerce. Nor does it expressly allege that Ron Hall's engaged in interstate commerce. That said, the Complaint does allege that Tucker "load[ed], clean[ed], and organiz[ed] the work trucks" and that Tucker cleaned at various work sites throughout his tenure. (Doc. 1, #2–3). From those allegations, the Court can reasonably infer that Tucker "handled supplies or equipment that originated out-of-state," which satisfies the first element. *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011). Indeed, other courts have found it "logical to conclude that janitorial/cleaning supplies have moved in interstate commerce," *id.* (collecting cases), and "that handling [] janitorial goods that have moved in commerce ... [is] more than sufficient to invoke enterprise coverage," *Boekemeier v. Fourth Universalist Soc'y in City of New York*, 86 F. Supp. 2d 280, 285–86 (S.D.N.Y. 2000). So while Tucker's allegations could have perhaps been more robust on the interstate commerce element, the Court finds that they are sufficient, if barely.

But that still leaves the second element: volume of sales or business done. And here, Tucker's allegations don't fare so well, mostly because he offers no allegations whatsoever for this element. In his motion, Tucker gestures the Court toward two cases that discuss the threshold for alleging volume of sales or business done. But neither one saves Tucker's claims. The first is *Bey v. WalkerHealthCareIT, LLC*, No. 2:16-cv-1167, 2018 WL 2018104 (S.D. Ohio May 1, 2018). Admittedly, that case did find that "incorporating 29 U.S.C. § 203(s)(1)(A) [the provision defining an 'enterprise engaged in commerce'] into a complaint is sufficient to allege the annual gross sales criterion," even when a plaintiff did not make any factual allegations about that element. *Id.* at *4. But here, Tucker didn't bother referencing § 203(s)(1) in his Complaint at all. And the Court is unwilling to create out of whole cloth allegations on his behalf. The second case to which Tucker points, *Burman v. Everkept, Inc.*, No. 1:15-cv-596, 2017 WL 1150664 (W.D. Mich. Mar. 27, 2017), offers even less help. There, the parties stipulated, for summary judgment purposes, that the defendant had a gross volume of sales exceeding $500,000 annually, so the element "[wa]s not at issue." *Id.* at *6. The Court is therefore unclear how that case applies here where Ron Hall's hasn't appeared, much less stipulated to the volume-of-sales element.

### 2. Tucker Plausibly Alleged Violations of Ohio Law.[3]

All is not lost, however. Tucker also alleges violations of the Ohio Constitution and Ohio's Prompt Pay Act, which, based on the Court's reading, do not have the

---

[3] Tucker also raised a claim for "Civil Damages for Criminal Act" under Ohio Revised Code § 2307.60. (Doc. 1, #6). But he premised that claim on Ron Hall's willfully violating the FLSA. (*Id.*). Ultimately, then, since Tucker failed to plausibly allege FLSA coverage (and thus an FLSA violation) the Court need not address Tucker's fourth claim.

same volume-of-sales coverage requirement as the FLSA. *See generally* Ohio Const. art. II, § 34a; Ohio Rev. Code § 4113.15.

The Ohio Constitution requires "every employer" to pay its employees a minimum wage. Ohio Const. art. II, § 34a. It adopts the FLSA's definitions of "employer" and "employee," *id.*, which the Court has already determined Tucker has satisfied, *see supra* Part B.1. And Tucker claims that Ron Hall's did not permit its employees to include the time they spent loading trucks each morning as part of their compensable time. (Doc. 1, #2–3). In other words, Tucker plausibly alleged that Ron Hall's did not pay him wages for time worked, making Ron Hall's liable under the Ohio Constitution. *See* Ohio Const. art. II, § 34a (explaining that there is no "pleading [requirement] beyond those that apply generally to civil suits").

But there is one wrinkle. The Ohio Constitution specifies that employers whose annual gross receipts are $394,000 or less (as adjusted for inflation) may pay their employees the wage rate that the FLSA sets (i.e., federal minimum wage) rather than paying state minimum wage. Ohio Const. art. II, § 34a; *see also State Minimum Wage Laws*, U.S. Dep't of Lab. (last updated Jan. 1, 2025), https://perma.cc/D994-97UB. As explained, Tucker failed to put forth any allegations about Ron Hall's annual gross sales, which renders the Court unable to conclude that its annual sales exceed $394,000. In other words, Tucker has only plausibly alleged entitlement to the federal (not state) minimum wage, which is currently $7.25 per hour. *Minimum Wage*, U.S. Dep't of Lab. (last accessed March 24, 2025), https://perma.cc/WVL8-8DBE.

Tucker has also plausibly alleged that Ron Hall's is liable under the Prompt Pay Act. That statute holds an employer liable if the employer fails to pay an employee his or her wages for thirty days or more beyond the regularly scheduled payday. Ohio Rev. Code § 4113.15. Tucker alleges that over thirty days have elapsed since his regularly scheduled payday, and that Ron Hall's has yet to pay Tucker his wages. (Doc. 1, #5). So he has sufficiently stated his Prompt Pay Act claim.

## C. Tucker Is Entitled to Damages, Attorney's Fees, and Costs.

Satisfied that Tucker has stated plausible claims under the Ohio Constitution and Prompt Pay Act, the Court turns to damages. Tucker asserts that he is entitled to approximately $2,092.02 in compensatory damages plus interest, $2,092.02 in liquidated damages, and $6,249.75 in attorney's fees and costs. (Doc. 7, #29). Tucker and his attorney, moreover, provided affidavits attesting to those damages, fees, and costs. (Tucker Decl., Doc. 7-1; Gleason Decl., Doc. 7-2). But a couple things bear noting at the outset. First, Tucker bases his damages calculation on Ron Hall's failure to pay him both minimum wage *and* overtime pay. Tucker, however, asserted his claim for overtime damages under only the FLSA—a claim he failed to plausibly allege. The Court, therefore, can award damages only for minimum wage violations under the Ohio Constitution (and untimely payment of wages under the Prompt Pay Act); it cannot award damages for overtime pay.[4] Second, Tucker relies on Ohio's minimum

---

[4] Tucker did not assert any claims under Ohio's Minimum Fair Wage Standards Act, which provides for overtime pay. *See* Ohio Rev. Code § 4111.03. That said, the overtime provision excludes "employer[s] whose annual gross volume of sales made for business done is less than one hundred fifty thousand dollars" from its definition of "employer." *Id.* And as explained, Tucker's Complaint is devoid of any allegations about Ron Hall's gross annual sales.

10

wage (currently $10.10 per hour) in estimating damages. (Doc. 7, #27 n.2). But, again, he did not plausibly allege that Ron Hall's annual sales exceed $394,000, which means, at this stage, the Court can conclude only that Ron Hall's was obligated to pay federal minimum wage. *See supra* Part B.2. That being the case, the Court will use the $7.25 per hour federal minimum wage in calculating damages.

Although Tucker could not "precisely calculate [damages] without records in [Ron Hall's] possession," (Doc. 7, #28), the Court finds that his affidavit, which attaches text message records detailing the hours he worked, is sufficient. Based on those texts, it is evident that Tucker arrived to work at around 6:00 a.m. and worked until around 3:30 p.m.[5] each day for five days per week. (Doc. 7-1, #35–114). Ron Hall's compensated Tucker for working only from 8:00 a.m. to 3:30 p.m., meaning Ron Hall's failed to pay Tucker for 10 hours of his work per week (two hours each morning times five days per week). And Tucker worked at Ron Hall's from April 4, 2023, until June 10, 2023—forty-eight business days. (*Id.* at #32, 35). Relying on the federal minimum wage, Tucker is thus entitled to $696 in minimum wage backpay (forty-eight days times two hours per day times $7.25).

But backpay isn't all Tucker deserves. The Ohio Constitution provides for treble damages. Ohio Const. art. II, § 34a ("Damages shall be calculated as an additional two times the amount of the back wages."); *see also Pineda v. Pit Columbus, LLC*, No. 2:17-cv-668, 2017 WL 5900559, at *3 (S.D. Ohio Nov. 28, 2017).

---

[5] Tucker's motion suggests that he worked until 4:10 p.m. each day. (Doc. 7, #28). But his affidavit and the attached text messages indicate that he usually worked until 3:30 p.m. (Doc. 7-1, #33, 35–114). The Court will therefore calculate damages based on Tucker working until 3:30 p.m. daily.

11

So Tucker is entitled to $2,088 in damages based on the $696 he's owed in backpay. And the Ohio Prompt Pay Act, for its part, calls for damages of "six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater." Ohio Rev. Code § 4113.15(B); *see also Mickens v. Sweet Twist Frozen Yogurt, LLC*, No. 2:20-cv-2244, 2021 WL 2069762, at *2 (S.D. Ohio May 24, 2021). Here, $200 is greater, and thus the amount to which Tucker is entitled. Taking that all together, Tucker's damages amount to $2,288.[6]

That leaves attorney's fees and costs. If an employer violates the Ohio Constitution's Minimum Wage Amendment, "the employer shall within thirty days of the finding pay the employee back wages, damages, and the employee's costs and reasonable attorney's fees." Ohio Const. art. II, § 34a. To calculate reasonable attorney's fees, Ohio courts employ the lodestar approach—that is, they determine the number of hours reasonably expended on the case then multiply that by a reasonable hourly fee. *Welch v. Prompt Recovery Servs., Inc.*, 2015-Ohio-3867, ¶¶ 20–

---

[6] In his motion, Tucker also requested "interest." (Doc. 7, #29). But he did not specify whether he seeks pre-judgment interest, post-judgment interest, or both. In the absence of any statutory authority or caselaw suggesting that pre-judgment interest is proper, the Court declines to award it. *Preferred RX, Inc. v. Am. Prescription Plan, Inc.*, 46 F.3d 535, 551 (6th Cir. 1995) ("An award of prejudgment interest is committed to the trial court's discretion."); *see also McNeal v. Serene Home Health Servs.*, No. 3:23-cv-13, 2024 WL 4850299, at *7 (S.D. Ohio Nov. 21, 2024) (explaining that Ohio law did "not support an award of prejudgment interest" because Ohio Revised Code §§ 4111.10 and 4113.15 did not provide for prejudgment interest and the plaintiff could point to no other statutory authority suggesting it was proper), *report and recommendation adopted sub nom.*, *McNeal v. Serene Home Health Servs., LLC*, No. 3:23-cv-13, 2025 WL 51086 (S.D. Ohio Jan. 8, 2025). Post-judgment interest, though, arises by operation of law as to any judgment in federal court. *See* 28 U.S.C. § 1961; *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002). Accordingly, Tucker is entitled to post-judgment interest at the statutory rate set out in § 1961(a) from the date of this Opinion and Order until the judgment is satisfied.

21 (9th Dist.). After that, a court may raise or lower the lodestar based on various factors. *Id.* ¶ 21.

Tucker requests $5,744.75 in fees and $505 in costs. (Doc. 7-2, #118–19). Based on the billing statement Dennis A. Gleason (Tucker's counsel) submitted, Gleason spent 20.89 billable hours on this case meeting with Tucker, drafting the Complaint, and researching and drafting the two default-related motions. (*Id.* at #117–18). Gleason's hourly rate, moreover, is $275. (*Id.* at #116). The Court is satisfied that Gleason's affidavit supports the reasonableness of Gleason's hours; it is sufficiently detailed, and none of the time reflected appears to be excessive or duplicative. The Court also finds that Gleason's hourly rate is reasonable. So the lodestar is $5,744.75. And the Court declines to adjust that lodestar upward or downward. Tucker has not requested an upward adjustment, nor does the Court see any reason to implement a downward adjustment.

As for costs, those consist of a $405 filing fee and $100 in service costs. (Doc. 7-2, #119). Given those costs were reasonable and necessary to the litigation, the Court will allow $505 in costs.

## CONCLUSION

For reasons explained, the Court **GRANTS IN PART** Tucker's Motion for Default Judgment (Doc. 7), and enters judgment in the amount of $2,088, plus $6,249.75 in attorney's fees and costs, for a total of $8,337.75 (plus post-judgment interest at the statutory rate under 28 U.S.C. § 1961). The Court therefore **INSTRUCTS** the Clerk to **TERMINATE** this matter on the Court's docket.

13

**SO ORDERED.**

<u>April 30, 2025</u>
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**